1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E-FILED 12.21.11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LAGUNA COMMERCIAL CAPITAL,
LLC, a Delaware limited liability
company,

               Plaintiff,

          vs.

SOUTHEAST TEXAS EMS, LLC, a
Texas limited liability company; SEAN
FITZGERALD, an individual; JASON
BOEVER, an individual, and DOES 1
through 10, inclusive,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 11-09930 MMM (PLAx)

PRELIMINARY INJUNCTION

       The court has fully considered the proposed findings of fact and conclusions of law submitted by plaintiff, as well as the complaint, plaintiff's *ex parte* application for temporary restraining order and preliminary injunction, and the supporting memorandum of points and authorities and declarations.  Based on the foregoing, it appears to the court's satisfaction that good cause exists for the issuance of a preliminary injunction.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Pursuant to Rules 52 and 65 of the Federal Rules of Civil Procedure, the court adopts the findings of fact and conclusions of law set forth in a separate order filed concurrently herewith, and attached hereto as Exhibit "A." The document is incorporated herein as though fully set forth.

All accounts referenced in this preliminary injunction are defined and described in the court's findings of fact and conclusions of law. Those definitions are incorporated by reference herein.

**PRELIMINARY INJUNCTION**

In accordance with the court's findings of fact and conclusions of law, IT IS ORDERED that, during the pendency of this action, defendants SETX, Fitzgerald and Boever and their respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with any of them are enjoined:

1.   From (a) transferring, disposing of, dissipating, or encumbering Plaintiff's Accounts (and/or proceeds thereof) and/or any assets that serve as collateral for LCC under the SETX Factoring Agreement and/or the MedQuest Factoring Agreement, including, but not limited to, Commercial Insurance Receivables ("CIR") and Governmental Program Receivables ("GPR"); (b) instructing account debtors to pay SETX directly instead of sending payments to the designated Lockbox Account or GPR Account, on Plaintiff's Accounts; (c) endorsing any negotiable instruments received as payment on Plaintiff's Accounts; (d) transferring, converting, loaning, encumbering, pledging, concealing, dissipating, spending, or otherwise disposing of any proceeds that have been received as payment on Plaintiff's Accounts; and (e) destroying writings reflecting payments made on Plaintiff's Accounts;

2.   Mandating that all payments on uncollected accounts under the SETX or MedQuest Factoring Agreements, whether CIR or GPR, from commercial insurers, Medicare

1  and/or Medicaid, be sent to a the designated Lockbox Account or GPR account

2  established at SNB Bank of Austin pursuant to the terms of the factoring

3  agreements.

4  3.   Transferring, encumbering, selling, concealing, pledging, hypothecating, assigning,

5  spending, withdrawing, disbursing, conveying, gifting, dissipating, or otherwise

6  disposing of funds in the SETX operating (Account No. 000001592748980) and

7  savings account (Account No. 000001833897901) at Chase Bank.  This injunction

8  applies to funds/proceeds that any defendant deposited into these accounts only if

9  such funds are derived from activity prohibited by this Order.  Defendants may

10  apply to the court for permission to use some portion of the funds in the Chase

11  Bank accounts for operating expenses and/or reasonable attorneys' fees, and the

12  court will determine whether to grant the request after affording plaintiff an

13  opportunity to respond.

14  IT IS FURTHER ORDERED that:

15  6.   Plaintiff serve defendants with a copy of this order within three (3) days of the date

16  the order is entered.

17  7.   Plaintiff serve Chase Bank and/or any commercial insurers and/or

18  Medicare/Medicaid with a copy of this order within three (3) days of the date the

19  order is entered.

20  The court, on its own motion, vacates the hearing on plaintiff's motion for a preliminary

21  injunction, currently calendared for December 21, 2011.

23  DATED: December 21, 2011

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

3

1
2
3
4
5
6
7
8
9
10
11                                    **EXHIBIT A**
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LAGUNA COMMERCIAL CAPITAL,
LLC, a Delaware limited liability
company,

                Plaintiff,

         vs.

SOUTHEAST TEXAS EMS, LLC, a
Texas limited liability company; SEAN
FITZGERALD, an individual; JASON
BOEVER, an individual, and DOES 1
through 10, inclusive,

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 11-09930 MMM (PLAx)

FINDINGS OF FACT AND
CONCLUSIONS OF LAW IN SUPPORT
OF PRELIMINARY INJUNCTION

On December 12, 2011, plaintiff Laguna Commercial Capital, LLC ("LCC") filed an *ex parte* application for a temporary restraining order and order to show cause why a preliminary injunction should not issue.  On December 14, 2011, the court granted Laguna's application in part and denied it in part, and ordered defendants to show cause by December 19, 2011, at 12 p.m. why a preliminary injunction should not issue.  Defendants failed to respond to the court's order.

Having reviewed the evidence, arguments, and memoranda submitted by LCC in support of its motion for preliminary injunction, the court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1.    On or about June 23, 2011, LCC and defendant Southeast Texas EMS LLC ("SETX"), by and through its representatives, Sean Fitzgerald ("Fitzgerald"), and Jason Boever ("Boever") (collectively, "Defendants"), entered into a written Accounts Receivable Purchase Agreement and Security Interest (the "SETX Factoring Agreement"), pursuant to which, among other things, LCC agreed to purchase accounts from SETX under an agreed-upon formula based upon SETX's eligible accounts receivable;

2.    LCC will likely prove that on or about June 23, 2011, in order to induce LCC to consummate the transactions contemplated by the SETX Factoring Agreement, and as a condition of LCC entering into the SETX Factoring Agreement, Fitzgerald executed a Guarantee (the "Guarantee"), pursuant to which he unconditionally guaranteed all indebtedness and obligations of SETX in favor of LCC, including, but not limited to, SETX's repurchase, payment and performance obligations under the SETX Factoring Agreement;

3.    Pursuant to the SETX Factoring Agreement, SETX granted LCC a security interest in various assets of SETX; on or about June 13, 2011, LCC perfected its security interest in SETX's assets by, among other things, filing a UCC-1 Financing Statement with the Texas Secretary of State bearing file stamp number 11-0017405079 (the "SETX UCC-l Financing Statement");

4.    In addition, Fitzgerald granted LCC a security interest in various of his assets, which LCC perfected by filing a UCC-1 Financing Statement with the Texas Secretary of State bearing file stamp number 11-0031315085 (the "Fitzgerald UCC-l Financing Statement");

5.    LCC factored SETX's healthcare accounts/receivables, which were of two types: (a) Commercial Insurance Receivables ("CIR"), which were paid by commercial insurers; and (b) Governmental Program Receivables ("GPR"), which were paid by Medicare and/or Medicaid;

6.      Under the SETX Factoring Agreement, SETX was to establish one or more lockbox and attendant collateral account(s) in SETX's name for the benefit of LCC that, with one exception described *infra*, were to be controlled solely by LCC;

7.      Under the SETX Factoring Agreement, SETX was appointed to collect the accounts as LCC's s agent.  It agreed to instruct all account debtors to make all payments to the lockbox(es) and collateral account(s), until all of SETX's obligations to LCC were repaid in full;

8.      Under the SETX Factoring Agreement, SETX agreed to receive and hold all remittances in trust for LCC;

9.      With respect to the GPR, Medicare/Medicaid were to make payments into a bank account in SETX's name.  The payments were then to be swept immediately into another account controlled by LCC so that LCC could use the payments to implement the terms of the SETX Factoring Agreement;

10.     Although SETX received payment on the GPR in its name, the accounts and the proceeds thereof (including payments) were owned by LCC pursuant to the SETX Factoring Agreement;

11.     On or about June 23, 2011, defendants (at LCC's instigation) established a lockbox and collateral account at SNB Bank of Austin for the CIR ("Lockbox Account");

12.     Defendants established an account at SNB Bank of Austin for the GPR ("GPR Account") on or about June 28, 2011;

13.     On or about June 23, 2011, LCC and non-party MQ EMS2, LLC, a Texas limited liability company, d/b/a/ MedQuest EMS ("MedQuest"), entered into a written Accounts Receivable Purchase Agreement and Security Interest (the "MedQuest Factoring Agreement"), pursuant to which, among other things, LCC agreed to purchase accounts, from MedQuest under an agreed-upon formula based upon MedQuest's eligible accounts receivable;

14.     Pursuant to the MedQuest Factoring Agreement, MedQuest granted LCC a security interest in various assets of MedQuest.  On or about June 13, 2011, LCC perfected

its security interest in MedQuest's assets by, among other things, filing a UCC-1 Financing Statement with the Texas Secretary of State bearing file stamp number 11-0017404826 (the "Medquest UCC-1 Financing Statement");

15.    Like the SETX factoring arrangement, the MedQuest factoring arrangement provided for the factoring of healthcare receivables of CIR and GPR (collectively, the "Medquest Receivables") and provided that payments were to be sent to designated lockbox and collateral accounts;

16.    MedQuest and SETX entered into a written Mutual Aid Agreement for Emergency and Non-Emergency Ambulance Services ("Mutual Aid Agreement"), pursuant to which SETX, a licensed Texas ambulance provider, agreed to provide emergency, non-emergency and specialty care transportation services for MedQuest;

17.    As the actual provider of the services of the joint venture, SETX billed the commercial insurer or Medicare/Medicaid for services rendered on MedQuest's behalf, and collected payments from the entity billed.  The payments were to be directed to the designated lockbox or GPR Account controlled by LCC; SETX was to receive a percentage of the funds collected;

18.    LCC is likely to prove that, as the purchaser of the SETX and MedQuest accounts (both CIR and GPR), it was the sole owner of the accounts and had the sole right to the proceeds ("Plaintiff's Accounts");

19.    Evidence that is undisputed on this record shows that the CIR were typically paid by check.  Under both the SETX and MedQuest Factoring Agreements, SETX was required to notify the commercial insurers that the account has been assigned to LCC and that payment was to be made to a lockbox/collateral account established by LCC.  LCC is likely to prove that SETX failed to do this, and instead continued to collect payments on the CIR directly;

20.    LCC will likely prove that defendants refused to instruct the commercial insurers to re-direct payment to the Lockbox Account; instead, they indicated that they would forward the payments to that account.  Evidence that is undisputed on this

record shows, moreover, that defendants deposited certain payments in their own Operating Accounts at SNB Bank of Austin or at Chase Bank (the "Chase Operating Account");

21.   Defendants received and continue to receive funds from Medicare/Medicaid in payment of the GPR via electronic funds transfer ("EFT") to SETX's Chase Operating Account;

22.   LCC will likely prove that SETX received all GPR payments in the Chase Operating Account contrary to the terms of the SETX Factoring Agreement;

23.   Upon discovering that the GPR were not being directed to the GPR Account, LCC demanded that defendants resubmit the required forms to Medicare/Medicaid to designate the GPR Account as that which should receive payments on the GPR. It also demanded that the CIR be remitted directly to the Lockbox Account;

24.   LCC has proffered evidence that is undisputed on this record that defendants refused to do so, and instead offered to transfer to LCC all amounts received from the GPR and CIR.  LCC has also proffered evidence that to date, defendants have failed to transfer all of the funds received to LCC;

25.   LCC will likely prove that although SETX was only the service provider and entitled to receive only a percentage of the MedQuest Receivables (as a fee), SETX collected the MedQuest Receivables directly, failed to direct payment to the designated lockbox or GPR account, commingled the proceeds of the MedQuest Receivables with the monies in its Chase Operating Account, and/or otherwise used the proceeds of the MedQuest Receivables for their own benefit;

26.   As LCC had purchased the MedQuest Receivables and/or held a first priority security interest in the MedQuest Receivables, LCC will likely be able to show that is the owner of the accounts and has the sole right to receive the proceeds;

27.   LCC has proffered evidence that defendants have refused to comply with their legal obligations and remit payments to LCC, and that they continue to use the funds (all of which are the proceeds of the accounts LCC purchased) in SETX's Chase

Operating Account and SNB Operating Account to pay their own expenses;

28.   Defendants have received payment on Plaintiff's Accounts and have used, transferred, or otherwise dissipated the funds;

29.   LCC has adduced evidence that defendants are having difficulty meeting their expenses and that there is a likelihood SETX will become insolvent;

30.   On December 14, 2011, plaintiff's counsel spoke with an attorney who purported to represent SETX and Fitzgerald.  This individual stated that defendants "had no money" and intended to file for bankruptcy;

31.   Since SETX controls receipt of payments via check or EFT, and causes them to be deposited and/or transferred into different accounts, and because LCC has only limited access to the Chase Operating Account, LCC has no way of determining the precise amounts that have been diverted and has therefore requested an accounting;

32.   LCC will likely show that, except for acts excused by defendants' breaches, it has performed all obligations it was required to perform under the respective contracts and guarantee by, among other things, advancing monies to SETX based on the accounts receivable of SETX that were eligible for funding under the SETX Factoring Agreement;

33.   It is likely LCC will prove that SETX has breached its obligations under the SETX Factoring Agreement by, among other things: (a) failing to meet its payment, repurchase, and indebtedness obligations (as those terms are defined in the SETX Factoring Agreement) to LCC when due; (b) failing to remit payment on receivables to LCC including, but not limited to, sending remittances to the Lockbox Account, the GPR Account, and any other account or address designated by LCC; (c) making false warranties, representations, and statements to LCC; (d) re-directing GPR to a location other than the GPR Account; (e) re-directing CIR to a location other than the Lockbox Account; (f) collecting and retaining funds from account debtors that are otherwise due LCC under the SETX Factoring Agreement; (g) failing to post payments within 24 hours and failing to notify LCC

of the receipt of payments; (h) failing to hold payments/remittances in trust for LCC and instead commingling and using, for its own benefit, proceeds that belonged to LCC; and (i) refusing to allow LCC access to information LCC demanded and to which it was entitled.  As a result of SETX's default under the SETX Factoring Agreement, Fitzgerald is in default under the Guarantee;

34.   LCC will likely be able to show that, as a direct result of defendants' breaches of the SETX Factoring Agreement and Guarantee, it has sustained damages;

35.   LCC is the owner of the healthcare accounts factored under both the SETX and MedQuest Factoring Agreements and has the sole right to the payments and proceeds of those accounts;

36.   It is likely that LCC will prove that defendants converted LCC's property by, among other things: (a) diverting payments to SETX; (b) collecting on accounts; (c) depositing the proceeds into SETX's operating accounts; (d) transferring proceeds into SETX's other accounts, and (e) by their own admission, using the proceeds for their own benefit and to pay their expenses;

37.   LCC advised defendants of the amount of their outstanding obligations under the SETX Factoring Agreement and the MedQuest Factoring Agreement;

38.   Defendants did not object to the amounts LCC claimed were due and owing;

39.   In fact, LCC has proffered evidence that defendants acknowledged their obligation to pay and promised to pay, but did not pay as promised.

40.   Defendants were contractually obligated to act as LCC's agent for collection of the accounts, to remit collections on the SETX and MedQuest receivables to the designated accounts, and to hold the funds in trust for LCC.

41.   LCC will likely prove that defendants failed to do so and instead used the funds for their own benefit.

42.   LCC will likely prove that it has sustained damages.

**CONCLUSIONS OF LAW**

1.    To the extent that any of the foregoing findings of fact are in fact conclusions of law, they are incorporated herein by this reference;

2.    A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 676 (2008).   Thus, a district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).   Such a showing requires that plaintiffs establish it "is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.   See *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) ("Under *Winter*, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest").

3.    LCC has shown that it likely to prevail on its breach of contract, breach of guarantee, conversion, and accounting claims.   See *Winter*, 555 U.S. at 20-21.

4.    LCC has shown that it is likely to succeed on its claim for breach of contract against SETX and its claim for breach of the Guarantee Agreement against Fitzgerald, as LCC has proffered evidence undisputed on the current record that (1) it entered into the Factoring Agreement and Guarantee Agreement with SETX and Fitzgerald respectively; (2) that it performed or was excused from performing all its obligations under the contracts, (3) that defendants breached the Factoring Agreement and Guarantee Agreement; (4) that their breach was the proximate cause of damage to LCC.   See *Wall Street Network, Ltd. v. New York Times Co.*,164 Cal.App.4th 1171, 1178 (2008); *Torrey Pines Bank v. Superior Court*, 216

Cal.App.3d 813, 819 (1989);

5.   LCC has shown that it is likely to prove its claim for conversion against SETX, Fitzgerald and Boever in that LCC has proffered evidence undisputed on the current record that (1) it owned and had the right to possess the proceeds of the CIR and GPR; (2) that defendants wrongfully exercised dominion over the proceeds; and (3) that LCC was damaged as a result.  See *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998) (citing *Moore v. Regents of University of California*, 51 Cal.3d 120, 144 & n. 38 (1990), and *Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 543-544 (1996)).

6.   LCC has shown that it is likely to prove its entitlement to an accounting in that it has proffered evidence undisputed on the current record that defendants were contractually obligated to act as LCC's agent for the collection of accounts, to remit collections on SETX and MedQuest receivables to designated accounts, and to hold the funds in trust for LCC; and that defendants failed to do so but instead used the funds for their own benefit.  It thus appears likely that an accounting will be required to ascertain which payments defendants retained and the full amount that defendants used for their benefit.  See *Teselle v. McLoughlin*, 173 Cal.App.4th 156, 179 (2009);

7.   LCC has shown that it will likely suffer irreparable harm if a preliminary injunction is not entered since circumstantial evidence and the statements of defendants' purported attorney indicate that defendants are insolvent and will continue to collect accounts owned/purchased by LCC.  See *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197,1119-1120 (C.D. Cal. 2007) ("Damages are no remedy at all if they cannot be collected, and most courts sensibly conclude that a damage judgment against an insolvent defendant is an inadequate remedy").  As LCC has shown a strong likelihood of success on the merits of its claims, its burden to show irreparable harm is somewhat reduced.

8.   The balance of equities tips in LCC's favor in that it will be irreparably harmed

13

absent entry of an injunction, while defendants will simply be enjoined to do what they voluntarily promised to do by entering into the SETX and MedQuest Factoring Agreements.  Defendants will not be harmed because they agreed to perform, and were compensated for performing what they will be enjoined to do by the terms of a preliminary injunction.  Further, defendants cannot assert that they would be injured by being prevented from diverting and spending property to which they have no legal or beneficial right.

9.     "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'"  *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1138–39 (9th Cir. 2009) (quoting *Bernhardt v. L.A. County*, 339 F.3d 920, 931 (9th Cir. 2003)); *Sammartano v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002) ("The public interest inquiry primarily addresses impact on non-parties rather than parties").   The injunction sought does not reach beyond the parties.  Consequently, the public interest is a neutral factor in this case.

10.    Weighing the factors, LCC has shown a strong likelihood of succeeding on the merits of its breach of contract, breach of guarantee, conversion, and accounting claims.   It has also shown a likelihood that it will be irreparably harmed if an injunction is not entered.  The balance of the equities tips in LCC's favor, and the public interest factor is neutral, and does not weigh against granting a preliminary injunction.  Consequently, the court concludes that the balance of factors weighs in favor of entering a preliminary injunction in this case.

DATED: December 21, 2011

                                                          _____
                                                          MARGARET M. MORROW
                                                          UNITED STATES DISTRICT JUDGE